UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LERON WILLIAMS,
        Plaintiff

v.                      3:01-CV-2107 (EBB)

CITY OF TORRINGTON, ET AL.,

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Decision on a summary judgment motion requires the Court to pierce the pleadings and to assess the proof, reviewing same in the nonmovant's favor, in order to determine if there is a genuine need for trial. See Fed.R.Civ.P. 56(c)("The judgment sought shall be rendered forthwith, if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."). If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be `no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23.

After thorough review of the memoranda of law, exhibits thereto, the affidavits included therewith, and the Local Rule 56(a)(1) and (2) Statements submitted by counsel in this case, the Court finds that there exist no genuine issues of material fact herein; hence, there is no need for trial of this matter. For the reasons set forth herein, Defendants' Motion for Summary Judgment [Doc. No. 21] is hereby GRANTED. The Clerk is directed to close this case.

## STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and the decision rendered on, this Motion.

Plaintiff Leron Williams ("Williams" or "Plaintiff) is a forty-three-year-old African-American male, who was previously employed by the Torrington Fire Department ("TFD"), commencing in 1983. On December 15, 1998, Williams, while on duty for the TFD, was injured while lifting weights, in compliance with his duties as a firefighter. Following this injury, Williams went on workers' compensation leave for some time less than one year. After this period, he intermittently returned to work, performing light duty assignments. In 1999 Plaintiff required a diskectomy and, to date, has been unable to resume his former duties with the TFD.

On May 9, 2000, Williams applied to the Board of Public Safety for disability retirement from the City of Torrington. In his letter of that date, Williams very specifically requested "to

receive all benefits to which I am entitled under Article XIII Sections 1(a),(b), and (c) to include Article XXV Section 11 (a), and Section 11 B option III and all Local 1567 Union Contract Benefits." This initial request was denied because he had failed to provide the necessary medical evaluations and had not exhausted his sick leave in compliance with the noted CBA Sections specifically cited to by Plaintiff..

According to the terms of Article XIII, Section 1 of the collective bargaining agreement ("CBA") between the City and Local 1567, as <u>specifically</u> denominated by Williams in his request for disability retirement, "if [an] injured or disabled employee is unable to physically return to duty, without regard to having or not having reached the point of maximum recovery, he or she shall be placed on sick leave no sooner than two years following the onset of such injury or disability and will remain on sick leave until his or her accumulated sick leave is exhausted or he or she is able to return to duty, whichever comes first." Article XIII, Section 1(b). "When such employee has exhausted his or her sick leave and is unable to return to duty . . . the employee may elect to . . . (2) make written application for retirement from the Torrington Fire Department to the Board of Public Safety." *Id.* at (c).

Williams was placed on sick leave effective December 16, 2000, which was two years after his injury had occurred, the earliest date that he could have been placed on sick leave pursuant to Article XIII, Section (1)(b). On April 13, 2001, he

3

again wrote to the Board of Public Safety, advising the members thereof that his accumulated sick time would be exhausted on April 21, 2001. Again, he requested all benefits due him under the identical Articles and Sections of the CBA cited by him in his previous letter of May 9, 2000.

On May 19, 2001, the Board of Public Safety, upon being advised that Williams had exhausted his sick leave, voted unanimously to approve his application for retirement and all benefits due him under the CBA.[1]

The CBA mandates a grievance process for dealing with "any matter or condition arising out of the employee-employer relationship, including any claim of unjust discrimination", which grievances must be reduced to writing and submitted to the Chief and Personnel Department of the fire department within 45 days after the employee knew or should have known of the act or condition upon which the grievance is based. CBA, at pp. 5-6. Williams never filed a grievance with regard to his disability retirement, as irrefutably required by the CBA. Thus, the Court has no subject matter jurisdiction over his claims. *See, e,g, Hunt v. Prior*, 236 Conn. 421, 431)(12996)(well-settled under federal and state law that, before resorts to courts is allowed, an employee must at least attempt to exhaust exclusive grievance procedures). Plaintiff ignored this requirement. Nevertheless,

---

[1]/ In his Complaint, filed November 13, 2001, **five months after the grant of his disability retirement benefits**, Plaintiff alleges his disability application is still pending and has been ignored by Defendants. Complaint at ¶¶ 18, 19.

4

on April 19, 2001, Williams filed a complaint with the CHRO, contending that the initial denial of his disability benefits and the requirement that he first exhaust his sick leave was due to the fact that he is African-American.

In his deposition, Williams stated that the sole basis of his racial discrimination claim is that he "heard" that a former co-worker, Lieutenant James Avallone ("Avallone"), was granted disability retirement without having to first exhaust his accumulated sick time. See Deposition of Leron Williams, May 21, 2002, at pp. 48-49; 67-68. However, Avallone was granted disability retirement pursuant to a completely different section of the CBA, Article XXV, Section 10, which **does not** require exhaustion of sick leave prior to such retirement. He was retired under Section 10 because he requested disability retirement pursuant to that very Section and met the conditions thereof.[2] / Williams further testified that he did not know whether the Defendants discriminated against him and that he was unaware of any discriminatory conspiracy against him. Deposition at pp. 64-65.

On August 22, 2001, the CHRO issued its Merit Assessment Review, dismissing his claim, "for the reason that there is no reasonable possibility that further investigation will result in a finding of reasonable cause inasmuch as, [inter alios]:

---

[2]/ Article XXV, Section 10 is reserved for firefighters who have "become permanently disqualified from performing any duty, upon certification of two doctors."

- You were denied disability retirement in July of 2000. . . Therefore, that incident was untimely filed [with the CHRO] in that it occurred more than 180 days prior to your filing of this complaint.

- You were injured on December 15, 1998, and placed on sick leave **as prescribed by your Union contract** on December 16, 2000. (Emphasis added).

- **The respondent's decisions were determined based on the terms of your Union contract.** (Emphasis added).

- You made no allegations due to any covered class basis.

- You did not provide any additional or substantive information which might refute the response or which might demonstrate discriminatory treatment based on race, color, disability, or retaliation for opposing discrimination due to any covered class basis.

The Dismissal Notice advised Williams that, if he intended to apply for reconsideration of the dismissal, he was required, pursuant to Conn.Gen.Stat. Section 46a-83, to file such request in writing within fifteen calendar days of the Notice. Williams, represented by counsel, failed to request reconsideration. "The complainant may appeal this disposition to the Superior Court of the State of Connecticut if reconsideration is requested and denied. Any appeal must **strictly comply** with all of the statutory procedures, requirements, and time frames." Dismissal Notice at p. 2. (emphasis added).

Rather than comply with the directives of the Dismissal Notice, Williams filed the present action in this Court on

6

November 13, 2001. His Complaint alleges violation of 42 U.S.C Sections 1981, 1983, and 1985; Title VII of the Civil Rights Act of 1964; the Fourteenth Amendment; and four sections of the Connecticut Fair Employment Practices Act ("CFEPA"); and the intentional and negligent infliction of emotional distress..

## LEGAL ANALYSIS

This Court must grant summary judgment with regard to both the federal and state law claims alleged in this Complaint for numerous reasons. First, each of Plaintiff's state law claims against the City of Torrington are barred by the mandatory requirements of Section 7-465 of the Connecticut General Statutes, which pertains to the liability of municipalities. In pertinent part, the statute directs, in absolute terms, that "written notice of the intention to commence such action and of the time when and place where the damages were incurred or sustained [must be] filed with the clerk of such municipality within six months after such action has accrued." As the Honorable Robert N. Chatigney held, in Amaro v. American Honda Motor Co., 917 F.Supp. 142, 143-44 (D.Conn. 1996), a plaintiff's state law claims against a municipality are barred if such plaintiff fails to comply with the notice and timeliness requirements of Section 7-465. It is beyond peradventure that the requirements of this statute are easily complied with; however, inasmuch as Williams never gave written notice to the City of Torrington and failed to complete service of his Complaint within the six months time frame mandated by Section 7-

465, summary judgment must be granted to Defendant City of Torrington on every state law claim alleged (CFEPA and the negligent/intentional infliction of emotional distress). [3]/

Second, Plaintiff names individual Defendants, without ever identifying what possible basis for liability allegedly exists against each of them. Every paragraph in the Complaint refers only to "defendants", without a single individual allegation, and are based on pure speculation and conjecture. See e.g., Complaint at ¶¶ 13, 15, 17, 20, 21. "The defendants **would not** have denied the disability retirement application of a similarly situated non-African-American firefighter. . .The defendants **would not** have forced a similarly situated non-African-American firefighter so to use his sick time. . .The defendants **would not** have forced such a unfair situation upon a similarly situated non-African-American firefighter . . . The defendants **would not** have ignored the disability requirement application of a similarly situated non-African-American firefighter. . . The defendants **would not** have caused a similarly situated non-African-American firefighter to fear for his job and disability

---

[3]/ Summary judgment is also granted as to the CFEPA claim inasmuch as Williams failed to exhaust his administrative remedies by failing to appeal the CHRO decision and obtain a release of jurisdiction. "The plaintiff had available to him administrative remedies that could have afforded him meaningful relief under the statutes that govern his claim of discrimination. His failure to exhaust his appellate review procedures after bringing his complaint to the CHRO forecloses his access to judicial relief, because it deprived the trial court of jurisdiction to hear his complaint." Osborn v. Rocklen Automotive Parts & Services, Inc., 4 Conn.App. 423, 425-26 (1985).

because of an injury." The only rationale this Court can glean vis-a-vis the individual Defendants is that they are being sued for merely being employees of the City of Torrington, *i.e.*, the Mayor, the Personnel Director, and "at various times", two former Fire Chiefs. It is beyond cavil that **none** of these individuals ever sat on the Board of Public Safety, which board is solely responsible for the determination of disability retirement benefits. *See* CBA at pp. 17-18. Resultingly, this Court lacks subject matter jurisdiction over each individual Defendant pursuant to the mandatory authority of Monell v. Department of Social Services, 436 U.S. 658 (1978)(respondeat superior may not serve as a basis for liability under Section 1983); Tomka v.Seiler Corp., 66 F.3d 1295 (2d cir. 1995)(individual employees may not be held personally liable under title VII); and Perodeau v. City of Hartford, 259 Conn. 729 (2002)(pertinent CFEPA Section "does not impose liability on individual employees"). [4]/

Third, it is upon the above-referenced speculation and conjecture that Williams alleges that the "defendants discriminated against the plaintiff in his contractual employment relationship, because of his race, in violation of 42 U.S.C § 1981." Complaint at ¶ 22. The Complaint, the contrary testimony

---

[4]/ This Court further holds that there is no viable Constitutional claim against the City of Torrington under Monell. Williams has failed to set forth any factual or substantive allegations to this effect. Therefore, there are no genuine issues of material fact as to any "policy or custom" of that City to discriminate on the basis of race. To the contrary, when Williams filed his timely disability retirement letter, his request was granted unanimously within two weeks.

9

at his deposition, Plaintiff's affidavit, and his Local Rule 56(c) Statement are utterly devoid of any substantive facts or evidence in support of such a discrimination claim. Contrary to this claim are the mandated requirements of the CBA Sections upon which Williams specifically requested disability retirement benefits and upon which the Board of Public Safety granted his disability retirement. There is no viability of a Section 1981 claim against any of the Defendants and summary judgment is granted as to each of them.

Fourth, Williams NEVER identifies one "similarly situated non-African-American firefighter", in any documents filed in this case or during his deposition testimony. Although he allegedly "heard" that Avallone was not required to exhaust his sick leave prior to disability retirement, Williams is not similarly situated to Avallone. Williams _specifically_ requested disability retirement pursuant to portions of the CBA which plainly mandate exhaustion of sick leave. In contradistinction, Avallone _specifically_ requested disability retirement pursuant to portions of the CBA which did not require exhaustion of sick leave. Cf. CBA Article XIII, Sections 1(a),(b),(c) with CBA Article XXV, Section 10. Williams further testified that he had no evidence whatsoever that Defendants "conspired to discriminate against the plaintiff due to his race, in violation of 42 U.S.C. § 1985." Inasmuch as he fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, summary judgment is appropriate as to each

10

Defendant as to Williams' claims of violation of 42 U.S.C. §§ 1981 and 1985, and the Equal Protection Clause of the Fourteenth Amendment.[5]/

Fifth, in civil rights actions, including the present case, a plaintiff is "bound to do more than merely state vague and conclusory allegations respecting the existence of a conspiracy. It [is] incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Powell v. Workers' Compensation Board, 327 F.2d 131, 137 (2d Cir.

---

[5]/In order to prevail on a racial discrimination claim, Williams must plead and prove that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Lucian v. The Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). In this Circuit, to constitute an adverse employment action, a change in working conditions must be "materially adverse." Galabya v. New York City Board of Educ., 202 F.3d 636, 640 (2d Cir. 2000). A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (internal quotations and citations omitted). Pursuant to Galayba, Williams has suffered no materially adverse employment action. Williams fails to respond to the Defendants' argument to this effect and his Complaint is devoid of such a claim. Thus, he has waived it. Further, as noted several times above, Williams specifically requested to be granted retirement disability benefits pursuant to a those portions of the CBA which authoritatively mandate the exhaustion of sick leave. He voluntarily retired from employment under a section by which he failed to lose any material benefits. Summary judgment is granted as to his claim of racial discrimination on this basis also.

1964). In the present case, the silence of any admissible evidence of such a conspiracy is deafening. As noted above, in his deposition, Plaintiff admitted that he did not know if there was a conspiracy, much less testify with regard to any particulars of said conspiracy. Deposition at pp. 64-64. Hence, summary judgment must be granted as to the Section 1985 claim in its entirety, for this reason, also.

Finally, as to Williams' claim for intentional infliction of emotional distress against all defendants, ". . .there is [only] liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Peyton v. Ellis, 200 Conn. 243, 254, n.5 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hill v. Pinkerton Security & Investigation Services, Inc., 977 F.Supp. 148, 159 (D.Conn. 1997)(citations, internal quotations marks omitted). Williams boot-straps his incognizable claim of alleged racial discrimination onto his emotional distress allegations in his Memorandum by claiming that the Defendants' acts in discriminating against the Plaintiff were extreme and outrageous within the meaning of Connecticut law. Inasmuch as there is not one scintilla of evidence that Williams was discriminated against, this non-viable argument is completely distinguishable from the

three cases cited by him. *Cf.* <u>Caesar v. Hartford Hospital</u>, 46 F.Supp.2d 174, 180(D.Conn. 1999)(Title VII racial discrimination; evidence that false reports to Department of Public Health were made for malicious purpose to retaliate against plaintiff and jeopardize her profession as a certified nurses' aide permitted cause of action to go to jury); <u>Mihalick v. Cavanaugh, et al.</u>, 26 F.Supp. 391, 396 (D.Conn. 1998)(**no discrimination claim involved**; police officer's allegations that four other officers commenced investigation and disciplinary proceedings against plaintiff for improper purposes supported jury award for intentional infliction of emotional distress); <u>Rosten v. Circuit Wise, Inc.</u>, 7 C.S.C.R. 1147 (1992)(**no discrimination involved**; employer who discharged plaintiff for her union activities found to have engaged in extreme and outrageous conduct). *Cf. also* <u>Whitaker v. Haynes Construction Co.</u>, 167 F.Supp.2d 251, 254-257 (D.Conn.2001)(collecting 17 cases providing and, applying, correct Connecticut standard by Connecticut state courts and Connecticut federal district courts applying Connecticut law).

Further, "a claim of negligent infliction of emotional distress may only be brought where the plaintiff alleges that [he] suffered emotional distress during the termination process. . . .", <u>Gupta v. City of Norwalk</u>, 221 F.Supp.2d 282, 295 (D.Conn. 2002), and, undermining Williams' claim even further, "termination for discriminatory reasons, without more, is not enough to sustain a claim for negligent infliction of emotional distress." <u>Miner v.</u>

13

Town of Cheshire, 126 F.Supp.2d 184, 198 (D.Conn. 2000). In the present case, Williams was not even terminated, but elected to retire under the CBA for his alleged disabilities. Within two weeks of his exhaustion of sick leave, as directed by the Section under which **he chose** to retire, the Board of Public Safety unanimously voted to grant to Williams disability retirement benefits, under the particular Sections of the CBA he specifically requested.

## CONCLUSION

For every reason set forth herein, Defendants' Motion for Summary Judgment [Doc. No. 21] is hereby GRANTED. The Clerk is directed to close this case.

SO ORDERED

/s/ 
ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 6th day of December, 2003.